UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| JULIA CANIGIANI and KATHERINE BYRNE, individually, and on behalf of all others similarly-situated,<br><br>                       Plaintiffs,<br><br>      - against -<br><br>COOKIE DO, INC.,<br><br>                       Defendant. | Civil Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Plaintiffs Julia Canigiani ("Ms. Canigiani") and Katherine Byrne ("Ms. Byrne) (collectively, "Plaintiffs"), by and through their attorneys, Imbesi Law P.C., bring this putative class action on behalf of themselves and all other similarly situated persons (collectively, "Class" or "putative Class") against Defendant Cookie Do, Inc. ("Cookie Do" or "Defendant"), and allege upon information and belief as follows:

## NATURE OF THE ACTION

       1.     Plaintiffs bring this putative class action against Defendant seeking damages sustained as a direct and proximate result of Defendant's violations of New York General Business Law ("GBL) §§ 349 and 350, fraudulent concealment and/or inducement, negligent misrepresentation and unjust enrichment in connection with Defendant's deceptive advertising, marketing and sales of edible cookie dough products.

       2.     Plaintiffs are two of thousands of consumers who purchased cookie dough products for consumption based upon the representation that the products were safe to eat and would not cause any illness.

3.      Defendant knows, or should have known, that its products could cause illness to consumers. Without correcting its material misrepresentation or omissions, Defendant charged Plaintiff and Class members for cookie dough products. Defendant failed to warn Plaintiffs and Class members that its products could cause illness.

4.      With notice and knowledge of its material misrepresentations or omissions, Defendant has not offered to compensate its customers to remedy their damages.

5.      Had Plaintiffs and members of the putative Class known that they could get sick from consuming Defendant's products, Plaintiffs and members of the putative Class would not have purchased Defendant's products.

6.      As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and members of the putative Class have sustained economic injury.

7.      Plaintiffs seek damages and equitable remedies under statutory and common law claims for themselves and members of the putative Class, of which Plaintiffs are members. Identified definitively below, the putative Class includes consumers who purchased edible cookie dough products from Defendant.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, to a reasonable probability; and (iii) there is minimal diversity because at least one Class member is a citizen of a state different from at least one Defendant.

9.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that

they form part of the same case or controversy.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391 because (i) many of the acts and transactions giving rise to this action occurred in this District; (ii) Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the marketing, distribution and sale of its products in this District and (iii) Defendant currently does substantial business in this District.

## PARTIES

11. Plaintiff Julia Canigiani is a citizen of the State of New York and a resident of the County of New York.

12. Plaintiff Katherine Byrd is a citizen of the State of New York and a resident of the County of New York.

13. Defendant Cookie Do, Inc., is a domestic business corporation with its principal place of business located in New York, New York. Defendant is authorized to and does conduct business in the State of New York. At all relevant times, Defendant transacted business in this District. At all relevant times, Defendant has developed, manufactured, marketed, sold and distributed its products in the State of New York.

## STATEMENT OF FACTS

14. Cookie Do's storefront is located at 550 LaGuardia Place, New York, New York. The store is arranged like an ice cream parlor and sells edible cookie dough products including, but not limited to, scoops of cookie dough, milkshakes, cookies, ice cream sandwiches and fudge.

15. Scoops of edible cookie dough are served in a cup, similar to a scoop of ice cream. Cookie Do offers a variety of flavors, including signature chocolate chip, sugar cookie,

brownie batter, oatmeal M&M and cake batter.

16. A single scoop costs $4, a double scoop costs $7 and a triple scoop costs $9.



17. Defendant also ships its products nationwide through its website.

**A. Defendant Falsely Advertises Its Products Have "No Chance" of Food-Borne Illness**

18. Most people are aware that there are dangers associated with eating traditional raw cookie dough. In contrast, Defendant specifically markets its products as safe-to-eat.

19. The social media hype and buzz around the allegedly safe-to-eat products often has customers waiting in line for hours. Defendant's line and closing policy on its website warns customers that they may wait in line for thirty (30) minutes to three (3) hours.

> Our line typically starts forming in advance of opening. **We open at 10 am.** Expect to stand in line for 30 minutes - 3 hours, depending on the day/time. To avoid the line, the best time to come is before noon on Tuesdays, Wednesdays and Thursdays. Expect longer lines on weekends, holidays and when it's nice weather.

20. The front page of Defendant's website states, "it is completely safe to eat the way

you've been sneaking it for years – straight from the mixing bowl.[1]



21.     In the "Frequently Asked Questions" section of its website, Defendant answers several questions relating to food safety. First, Defendant represents that "all ingredients in each of our delicious, homemade recipes are completely safe to consume just as they are – unbaked."

**THE DŌ**

**IS DŌ REALLY SAFE TO EAT UNBAKED?**

You heard us right! Finally, cookie dough that you don't have to pretend you are going to bake! All ingredients in each of our delicious, homemade recipes are completely safe to consume just as they are – unbaked. We give you peace of mind, allowing you to eat a piece of cookie dough heaven how you like it best.

---

[1] https://www.cookiedonyc.com/cookie-dough-confections (last accessed September 20, 2017).

22. Defendant continues to represent that there is "NO chance of food-borne illness or the risk that comes along with eating raw flour products. At last, worry-free treats you can't get sick from. DIG IN!"[2]

**BUT DOESN'T COOKIE DOUGH CONTAIN EGGS?**

For products that typically contain eggs, we use a pasteurized egg product, which means there is NO chance of salmonella. The heat process kills any potentially harmful bacteria. Yay! You can enjoy all DŌ products unbaked.

**WHAT ABOUT THE FLOUR YOU USE? IT IS RAW?**

We're glad you asked! We use a heat-treated, ready-to-eat flour. That means NO chance of food-borne illness or the risk that comes along with eating raw flour products. At last, worry-free treats you can't get sick from! DIG IN!

23. In a January 2017 interview with CBS News, founder Kristen Tomlan discussed her products, under the heading "Better Safe Than Sorry – New Shop Sells Raw Cookie Dough Without the Risk," and informed viewers that her products were "completely safe."[3] Ms. Tomlan further told consumers that "the only risk is that you become addicted to it."

24. However, contrary to Defendant's representations, consumers regularly become sick after eating Defendant's products.

**B. Plaintiffs Become Ill After Consuming Defendant's Edible Cookie Dough Products**

25. In or about March of 2017, Plaintiffs went to visit Cookie Do with friends. Plaintiffs were excited as they had seen the publicity surrounding the edible cookie dough and were looking forward to trying the products.

26. Plaintiff Canigiani ordered the ice cream "SANDŌWICH," which consists of ice cream sandwiched between two layers of Defendant's signature chocolate chip cookie dough. Within approximately fifteen minutes, Plaintiff Canigiani began experiencing stomach pains.

---

[2] https://www.cookiedonyc.com/faqs/ (last accessed September 20, 2017).
[3] https://www.cbsnews.com/news/do-cookie-dough-safe-to-eat-new-york-city/ (last accessed September 20, 2017).

6

Later that day, she experienced more severe stomach pains and nausea. Throughout the night, Plaintiff suffered from diarrhea. She was unable to eat until the following afternoon.

27. Plaintiff Byrne ordered one scoop of oatmeal M&M. Plaintiff Byrne took a few bites, but stopped eating it because she felt nauseous. Shortly thereafter, Plaintiff Byrne experienced heart burn and a stomach ache. Plaintiff Byrne experienced a stomach ache, heartburn, and nausea until the middle of the following day.

### C. Similarly Situated Individuals Have a Similar Experience to Plaintiffs – Sickness After Consuming Defendant's Allegedly Safe-to-Eat Products

28. Plaintiffs' experience is not unique. The internet is replete with numerous consumers of Defendant's edible cookie dough products who complain of illness after purchasing and consuming Defendant's products.

29. "Britney S." from Manhattan, New York, posted on Yelp, "[t]his shitty dough gave me a headache and a stomachache."

30. "Stephen J." from Nicasio, California, posted on Yelp, "[i]t was terrible. I had a very bad stomach ache after eating here their cookie dough and had to go to the bathroom several times afterwards."

31. "David K." from Manhattan, New York, posted on Yelp, "[t]his cookie dough made me feel sick the next day. Pasteurized, yeah right."

32. "Brittney R." from Woodbury, New York, posted on Yelp, "[t]his place sucks. We waited online for over an hour and the "do" just sucked and actually made me sick."

33. "Avi S." from Sharon, MA, posted on Yelp, "[t]he cookie dough wasn't very good and I felt sick after eating it. An hour later I puked it all up."

34. "Phoebe K." from New York, New York, posted on Yelp, "[p]lus my friend and I both suffered from stomach ache after having the dough."

35. "Amanda S." from Hoboken, New Jersey, posted on Yelp, "[i]f you want about 5 minutes of Delicious and A whole night of stomach aches then this is the place for you."

36. "Lindsay D." from Manhattan, New York, posted on Yelp, "my bowels were still ravaged with the power of 1000 suns. Two bites of this ungodly substance will have you on the floor in seconds."

37. Rather than acknowledge this serious issue, Defendant continues to sell and market its products as "completely safe," and gain profits, thus being unjustly enriched.

38. At no time did Defendant advise Plaintiffs that its products could cause illness.

39. Plaintiffs and Class members purchased Defendant's products with no reason to suspect or know that the products could cause illness.

40. As a direct and proximate result of Defendant's false and misleading statements and omissions, Plaintiffs and Class members have suffered economic injury by paying for products and being deprived of the full intended use of the products.

41. By marketing, selling and distributing cookie dough products to consumers, Defendant made actionable statements that the products were safe for consumption and without risk of food-borne illness.

42. Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading and with the intent that consumers rely upon such concealment, suppression and omissions.

43. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had exclusive access to its recipes and information concerning its products that Plaintiffs and Class members could not and did not review.

## CLASS ALLEGATIONS

44. Plaintiffs repeat and reallege every allegation above as if set forth herein in full.

45. Plaintiffs brings this action on their own behalf, and on behalf of the following class pursuant to Fed. R. Civ. P. 23(a), 23(b) (2), and/or 23(b) (3):

> **National Class:** All persons in the United States who, from March 17, 2014, to the present: (i) purchased edible cookie dough products from Defendant's store located at 550 LaGuardia Place and experienced illness and/or (ii) purchased edible cookie dough products from Defendant's website and experienced illness.
>
> **New York Subclass:** All persons in New York who, from March 17, 2014, to the present: (i) purchased edible cookie dough products from Defendant's store located at 550 LaGuardia Place and experienced illness and/or (ii) purchased edible cookie dough products from Defendant's website and experienced illness.

46. Excluded from the Class is Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the cookie dough products for purposes of resale, and the Judge(s) assigned to this case.

47. Plaintiffs reserve the right to amend or modify the Class definitions in connection with a motion for class certification or as warranted by discovery.

48. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

49. Plaintiffs do not know the exact size of the proposed Class; however, Plaintiffs believe that the Class encompasses thousands of individuals who are dispersed throughout the United States. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

50. The identity and address of each class member can be readily ascertained through mass advertisement. Class members may be notified of the pendency of this action by mail and/or electronic mail and/or other electronic and social media means, by posting notice at

Defendant's store where the subject product is sold, and by notifying past purchasers to identify themselves in order to participate by way of affidavit or otherwise, supplemented (if deemed necessary or appropriate by the Court) by published notice.

51. There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class. The damages sustained by Plaintiffs and the other members of the Class flow from the common nucleus of operative facts surrounding Defendant's misconduct. The common questions include, but are not limited to, the following:

   a. whether Defendant committed statutory and common law fraud;
   b. whether Defendant committed statutory and common law negligence;
   c. whether Defendant's conduct violated the New York Business Law § 349;
   d. whether Defendant's conduct violated the New York Business Law § 350;
   e. whether Defendant had knowledge that its products caused illness but failed to disclose the existence of such knowledge;
   f. whether Defendant has unjustly enriched itself by deceptively advertising that its products have no chance of illness;
   g. whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or property and/or value; and
   h. whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

52. Plaintiffs' claims are typical of the claims of the Class since each Class member was subject to the same deceptive business practices and course of conduct. Furthermore, Plaintiffs and all members of the Class sustained monetary damages including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

53. Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs

10

are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation and are experienced in class action litigation.

54. A class action is superior to other methods for the fair and efficient adjudication of this controversy. While substantial, the damages suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them. A class action regarding the issues in this case does not create any problems of manageability. The class action device presents far fewer management difficulties than alternative methods of adjudication, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court.

55. The Class may also be certified because:

   a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

   b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability to protect their interests; and

   c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

56. Separate and distinct from the damages caused by Defendant's unlawful conduct, final injunctive and declaratory class-wide relief is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the class.

## COUNT I
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

57. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

58. New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

59. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York General Business Law § 349.

60. Plaintiffs and members of the Class are consumers who purchased products from Defendant for their personal use.

61. Defendant has engaged in deceptive and misleading practices, which include, without limitation, misrepresenting to Plaintiffs and Class members that its products will not cause illness and causing Plaintiffs and Class members to pay for products which do in fact lead to illness.

62. By reason of this conduct, Defendant has engaged and continues to engage in deceptive conduct in violation of the New York General Business Law.

63. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs and members of the Class have sustained from having paid for and consumed Defendant's products.

64. As a result of Defendant's violations, Plaintiffs and others similarly situated have suffered damages and are entitled to recover those damages as well as reasonable attorney's fees from Defendant.

## COUNT II
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350

65. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

66. New York General Business Law § 350 prohibits false advertising in the conduct

12

of any business, trade, or commerce.

67. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

68. Defendant was and is misleading in a material aspect due to false statements regarding its products, and has therefore violated New York General Business Law § 350, causing Plaintiffs and others similarly situated damages.

69. As a result of Defendant's violations, Plaintiff and others similarly situated have suffered damages due to said violation and are entitled to recover damages and reasonable attorney's fees from Defendant.

## COUNT III
## FRAUDULENT CONCEALMENT / FRAUDULENT INDUCEMENT

70. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

71. Defendant had and continues to have a duty to warn consumers to whom it markets edible cookie dough products that the products could cause illness. That the products could cause illness, contrary to Defendant's advertisements, is material information that Defendant has a duty to disclose to those purchasing its products, who, unlike Defendant, do not have access to such information.

72. Defendant, with the intent that Plaintiffs and members of the putative Classes rely thereupon, has and continues to sell its products as having "no chance" of food-borne illness, causing Plaintiffs and Class members to overpay for the products based upon material misrepresentations.

73. Based upon Defendant's concealment of these material facts, Defendant induced consumers, including Plaintiffs and members of the putative Class, to rely upon Defendant's omission and misrepresentation, and to purchase and/or consume its cookie dough products.

74. Plaintiffs and members of the putative Class have sustained economic injury as a direct and proximate result of Defendant's omissions and misrepresentations.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

75. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

76. Defendant had and continues to have a duty to warn consumers to whom it sells cookie dough products that the products may cause illness, contrary to Defendant's advertisements. That the products could cause illness, contrary to Defendant's advertisements, is material information that Defendant has a duty to disclose to those purchasing its products, who, unlike Defendant, do not have access to such information.

77. At the time Defendant made its representations that the cookie dough products it sells have "no chance of food-borne illness," Defendant knew or should have known that these representations were false or that Defendant made them without knowledge of their truth or veracity.

78. Having negligently misrepresented and/or negligently omitted these material facts, Defendant has and continues to sell cookie dough products that can cause illness after consumption, causing Plaintiff and Class members to become ill.

79. Based upon Defendant's negligent misrepresentation or concealment of these material facts, Defendant induced consumers, including Plaintiffs and members of the putative Class, to rely upon Defendant's omission and misrepresentation, and to purchase and/or consume edible cookie dough products.

80. Plaintiffs and members of the putative Classes have sustained economic injury as a direct and proximate result of Defendant's omissions and misrepresentations.

## COUNT V
**UNJUST ENRICHMENT**

81. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

82. As Plaintiffs and the Class show just grounds for recovering money to pay for a benefit that Defendant received from them, they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law, or a quasi-contract as an alternative to a claim for breach of contract.

83. Plaintiffs and members of the Class conferred a benefit upon Defendant by purchasing edible cookie dough products from Defendant. Defendant had knowledge that this benefit was conferred upon them.

84. Defendant, having received such benefit, is required to make restitution as the circumstances here are such that, as between the two, it is unjust for Defendant to retain such monies based on the illegal conduct described above. Such money or property belongs in good conscience to Plaintiffs and the Class members and can be traced to funds or property in Defendant's possession.

85. Plaintiffs and Class members have unjustly enriched Defendant through payments and the resulting profit enjoyed by Defendant as a direct result of such payments. Plaintiffs' and Class members' detriment and Defendant's enrichment were related to and flowed from the conduct challenged in this Complaint.

86. An entity that has been unjustly enriched at the expense of another is required to make restitution to the other. Under common law principles recognized in claims of common counts, assumpsit, and quasi-contract, as well as principles of unjust enrichment, under the circumstances alleged herein it would be inequitable for Defendant to retain such benefit without paying restitution or damages therefor. Defendant should not be permitted to retain the benefit

conferred via payments received from and/or paid by Plaintiffs and Class members as a result of such transactions, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

## REQUEST FOR RELIEF

Plaintiffs respectfully requests relief against Defendant as set forth below:

a. An award of damages, including actual, general, special, incidental, statutory, punitive, treble and consequential, in an amount to be determined at trial;

b. Notice to the Class of this action;

c. An injunction against Defendant prohibiting Defendant from continued unlawful practices, policies and patterns set forth herein;

d. Appoint Plaintiffs as the representative of the Class and their Counsel as Class counsel;

e. Pre-judgment and post-judgment interest as provided by law;

f. Reasonable attorneys' fees and costs; and

g. Such other and further relief that this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
September 21, 2017

                            Respectfully Submitted,

                            IMBESI LAW P.C.

                            /s/ *Brittany Weiner*
                            Brittany Weiner, Esq.
                            450 Seventh Avenue, Suite 1408
                            New York, New York 10123
                            (646) 767-2271
                            brittany@lawicm.com